# IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JENNIFER A. RHODES,** ) | |
| ) | |
| Petitioner, ) | |
| vs. ) | |
| ) | 2:05cv1515 |
| ) | Electronic Filing |
| **RHONDA WINSTEAD, Respondent,** ) | |
| **and the ATTORNEY GENERAL** ) | |
| **OF THE STATE OF PENNSYLVANIA,** ) | |
| **Additional Respondent,** ) | |
| ) | |
| Respondents. ) | |

### MEMORANDUM ORDER

AND NOW, this 9th day of March 2010, after de novo review of the record and upon due consideration of [40] the magistrate judge's report and recommendation filed on September 18, 2009, and [43] petitioner's objections thereto, IT IS ORDERED that petitioner's objections are overruled, the Petition for Writ of Habeas Corpus is dismissed and the concomitant request for a certificate of appealability is denied. The report and recommendation as augmented below is adopted as the opinion of the court.

Petitioner's contention that applying 28 U.S.C. § 2254 (d)(2)'s "unreasonable determination of the facts" standard would produce a result different than (e)(1)'s "presumption of reasonableness" standard is unavailing. Under either approach petitioner has failed to establish a basis warranting further development of the record. Consequently, all of petitioner's grounds attacking the report and recommendation fall short of the mark.

As implicitly noted by petitioner, some circuit courts have determined that 28 U.S.C. § 2254 (d)(2) and (e)(1) were intended to address separate components or stages of review in assessing a state court conviction. See Taylor v. Maddox, 366 F.3d 992 (9th Cir. 2004) ((d)(2) applies to challenges mounted on intrinsic evidence); Valdez v. Cockrell, 274 F.3d 941, 951 (5th Cir. 2001) ((e)(1) applies to review of individual facts from the state court record and (d)(2) applies to the review of the entire factual basis on which the state court decision rests); Ward v.

Sternes, 334 F.3d 696 (7th Cir. 2003) (underlying factual determination are evaluated using (e)(1)).  Other courts have declined to resolve the seemingly inconsistent text of the statute. See e.g. Teti v. Bender, 507 F.3d 50, 58 (1st Cir. 2007) (declining to resolve the issue).

In Lambert v. Blackwell, 387 F.3d 210 (3d Cir. 2004), the United States Court of Appeals for the Third Circuit declined to adopt a talismanic approach to the application of each section. Instead, it opined that "[t]he fundamental prerequisite to granting the writ on factual grounds is consideration of the evidence relied upon in the state court proceeding. Section 2254(d)(2) mandates the federal habeas court to assess whether the state court's determination was reasonable or unreasonable given that evidence." Id at 235.  It further explained:

> In some circumstances, a federal court may wish to consider subsidiary challenges to individual fact-finding in the first instance applying the presumption of correctness as instructed by (e)(1). Then, after deciding these challenges, the court will view the record under (d)(2) in light of its subsidiary decisions on the individual challenges. In other instances, a federal court could conclude that even if petitioner prevailed on all of his individual factual challenges notwithstanding the (e)(1) presumption of their correctness, the remaining record might still uphold the state court's decision under the overarching standard of (d)(2). In that event, presumably the (d)(2) inquiry would come first.

Id at 236 n.19.[1]  The Supreme Court recently took a very similar approach and declined to address the relationship between these two sections where the petitioner had failed to show that the state court's determination of the facts was unreasonable in any event. Wood v. Allen, – U.S. – , 2010 WL 173369 (Jan. 20, 2010); accord Rice v. Collins, 546 U.S. 333, 339 (2006).

Regardless of the order of application, in both approaches sanctioned by the Third Circuit two points are paramount: first, each section "express[es] the same fundamental principle of deference to state court findings," and second, "petitioner must show an unreasonable determination . . . in light of the entire record in the original state court trial." Lambert, 387 F.3d at 236 n.19.  Petitioner cannot show that an unreasonable determination was made by the state court under an approach that accords only minimal deference to the state court findings. Thus,

---

[1] Drawing on the approach utilized by the courts before the passage of the AEDPA, the magistrate judge employed the first approach in reaching the recommendation that the petition be dismissed.

her attempt to seek shelter under the application of (d)(2) is misplaced.

The gravamen of petitioner's objections are that the state trial judge failed to credit certain evidence advanced to corroborate her testimony at a suppression hearing seeking to establish that her taped confession had not been made voluntarily. She contends that by failing to discuss this corroborating testimony, which was given by her initial state court attorney, the trial judge committed an error of sufficient magnitude to warrant the extraordinary relief she requests. But the corroborating evidence is not and cannot be the workhorse she makes it out to be under any permissible review of the trial judge's factual determinations.

The standards governing whether a confession was given voluntarily are well settled. The Third Circuit has observed that a statement will be found to have been given involuntarily where the defendant's "will was overborne in such a way as to render his confession the product of coercion." Lam v. Kelchner, 304 F.3d 256, 264 (3d Cir. 2002) (quoting Arizona v. Fulminante, 499 U.S. 279, 288 (1991)). "In determining whether a statement is voluntary, Supreme Court precedent requires consideration of 'the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation.'" Id. (quoting Dickerson v. United States, 530 U.S. 428, 434 (2000) and Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973)). These surrounding circumstances can include "not only the crucial element of police coercion, but may also include the length of the interrogation, its location, its continuity, [and] the defendant's maturity, education, physical condition, and mental health." Id. (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986), and Withrow v. Williams, 507 U.S. 680, 693 (1993) (internal citations omitted)).

It is clear that the trial judge focused his consideration on the totality of the circumstances surrounding the interrogation and the tape-recorded statement, and in doing so he considered and analyzed the critical aspects of the event as he found them to bear on petitioner's will in giving the statement. After considering the evidence that relayed or reflected a first-hand account of the event, he concluded that petitioner's statement was not the product of improper police coercion and as a result denied her motion to suppress. The intrinsic evidence from the event and the

3

evidence relaying an account of what transpired based on personal knowledge was taken into account by the trial judge and provided ample support for his ruling on the motion.

The intrinsic evidence contained within petitioner's statement clearly provided what could be credited as direct insight into what had occurred prior to and was occurring during the time she made her statement. As noted by the state court trial judge and recounted in the Report and Recommendation, the intrinsic evidence from the recorded statement indicated petitioner was advised of her constitutional rights prior to beginning the tape-recorded interview, she stated during the interview that Detectives Freeman and McCabe had not threatened her nor promised her anything in exchange for her statement, and she expressly acknowledged during the interview that she was making it voluntarily. Furthermore, petitioner testified that she felt she was free to leave the police station prior to her initial confession. This in conjunction with the account relayed in the taped statement indicated not only a willingness to give the interview, but the lack of an overborne will, and the lack of coercion by the police detectives. Thus, the intrinsic evidence from the confession bearing on whether it was given voluntarily, knowingly and intelligently was at the very least forceful.

Both Detective Marraway and Detective Freeman testified in a manner that corroborated petitioner's tape-recorded statements and the inferences flowing therefrom. Detective Marraway recounted that petitioner agreed to go to the station, received <u>Miranda</u> warnings after she was brought to the interview room, signed an interrogation form, and appeared to be calm and collective during the interview, even when she was confronted about pawning the victim's rings. Detective Freeman testified that petitioner had agreed to give her tape-recorded statement voluntarily and that she had not been threatened or subjected to any form of coercion prior to the recording. He further testified that no promises of lenient treatment had been made in exchange for petitioner's statement.

The only other first-hand account of the circumstances under which the confession was obtained came from the testimony of petitioner. She testified at the suppression hearing in support of her contention that the confession had been given involuntarily. Her attorney, Mark

4

Rubenstein, then testified to what petitioner had told him days after the police interview. Rubenstein was not a witness to, nor did he provide further actual first-hand knowledge about what was said during the interrogation.

      The trial judge fully evaluated the direct and first-hand sources of information bearing on the issue of whether petitioner's statement voluntarily was given. He also acknowledged that Rubenstein had given testimony in support of petitioner's account of the circumstances surrounding her confession but did not discuss that testimony further. By acknowledging that Rubenstein had testified, the trial judge explicitly indicated that he had not "ignored" this testimony. To the contrary, it is thus clear that after making credibility determinations about those with first-hand knowledge, he had decided the factual issues against petitioner. And if he did not find petitioner's direct testimony about the event credible, he by implication did not find that Rubenstein's testimony changed his assessment or added a dimension that warranted further discussion.

      Considering the entirety of the circumstances, it was not unreasonable for the trial judge to give no probative weight to Rubenstein's second-hand account of what petitioner was claiming had been said during her encounter with the detectives. The trial judge failed to find the petitioner's testimony credible on the stand, therefore, he was entitled to conclude that her out of court statements made to her attorney failed to provide sufficient weight to warrant further discussion. This was a very reasonable determination in light of all the circumstances.

      It follows that even if it is assumed that section 2254(d)(2) applies to all aspects of the inquiry at hand, the state court's determination of the facts surrounding the issue of voluntariness was not unreasonable. Merely advocating that the trial judge should have given more weight to certain testimony or discussed it explicitly or differently does not suffice to show that the state court's decision is based on an unreasonable determination of the facts. Where the trial court's findings are supported by the direct evidence and its analysis of the entire record is not seemingly inaccurate, something more is required. Similarly, seeking to have the available evidence re-evaluated and re-weighed by the fact-finder because certain corroborating evidence was not

addressed in detail is not within the scope of habeas corpus review. Cf. Miller-El v. Cockrell, 537 U.S. 322, 347 (2003) (the trial court is not required to make a detailed finding addressing every piece of evidence). As the fact finder, the trial judge was in the best position to make credibility determinations and decide what weight should be given to each piece of evidence during the suppression hearing. That function sufficiently was fulfilled at the state court level and the resulting denial of petitioner's motion to suppress was not based on an unreasonable determination of the facts. Because petitioner cannot meet the § 2254(d)(2) standard and merely has demonstrated that the trial judge could have given more weight to petitioner's testimony and evidence, her petition properly has been denied.

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc: Rebecca D. Spangler, Esquire
Rusheen R. Pettit, Esquire
Office of the District Attorney
Post Conviction/Habeas Corpus
401 Allegheny County Courthouse
Pittsburgh, PA 1521

Kimberly Rose Brunson, Esquire
Federal Public Defender's Office
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA 15222-3716